# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-05-00082-CR

**Uriel Rodriguez, Appellant**

**v.**

**The State of Texas, Appellee**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 331ST JUDICIAL DISTRICT
## NO. 3021939, HONORABLE MICHAEL J. MCCORMICK, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Uriel Rodriguez appeals from judgments of conviction for indecency with a child by contact and aggravated sexual assault of a child. *See* Tex. Pen. Code Ann. § 21.11 (West 2003), § 22.021 (West Supp. 2005). The jury assessed a twenty-year prison term for the former offense and a thirty-five year term for the latter. In his only point of error, Rodriguez asserts that the trial court violated his Sixth Amendment confrontation right by limiting his cross-examination of the outcry witness. We will overrule this contention and affirm the convictions.

The complainant, L. P., was one of three children of Jesus Pardo and Maria Martinez Robledo. Pardo and Robledo were married in 1994, the year L. P. was born, separated in November 2000, and divorced in March 2002. In June 2002, when the alleged incidents took place, Robledo and her children were living with Rodriguez. Pardo had visitation with the children on weekends.

L. P. testified that Rodriguez regularly rubbed her chest, touched her genitals, and penetrated her vagina with his finger. She made her first outcry to her father on a Friday afternoon, after he had picked her and her siblings up for the weekend. Pardo testified that he noticed that L. P. seemed depressed and asked her what was wrong. L. P. said, "Angel [Rodriguez] is mean," and began to cry. Pardo stopped at a park and talked to L. P. while the other children played. During this conversation, L. P. told Pardo what Rodriguez had done to her. Pardo stopped a passing police car and reported what his daughter had said.

Defense counsel began his cross-examination of Pardo by asking if it was true that his marriage to Robledo ended because "you assaulted your wife." Pardo replied that this was true. Counsel asked Pardo if he "broke her wrist and . . . broke her hip." Pardo denied this. At this point, the State objected and there was a discussion outside the jury's presence. We glean from the discussion that defense counsel was basing his questions on allegations made in Robledo's application for a protective order issued at the time she and Pardo separated. The State argued that the protective order and its contents were irrelevant. Defense counsel responded that the order showed Pardo's "propensity for violence" and that "he is jealous and compulsive. It goes to my defensive theory that he may be the perpetrator, not my client, and the reason why he assaulted his wife, Judge, is because another man looked at her, and that certainly goes to his credibility and motive." The court sustained the State's objection, ruling that the protective order was inadmissible hearsay and that the details of the admitted assault were not relevant to Pardo's credibility as a witness.

The court allowed counsel to make an offer of proof for the record. In response to counsel's questions, Pardo denied being "jealous and possessive" of Robledo and said he did not remember assaulting his wife "because she was looking at another man." Pardo denied breaking Robledo's hip or injuring his son by pushing him down and cutting his head. He acknowledged that he did not take Robledo to the hospital immediately after the assault, but the next day.

As part of the Sixth Amendment confrontation right, a defendant must be given great latitude to show any fact that would tend to establish ill feeling, bias, motive, or animus on the part of a witness testifying against him. *Delaware v. Van Arsdall*, 475 U.S. 673, 678-79 (1986). The rules of evidence also recognize the right to impeach a witness by proof of circumstances or statements showing bias or interest on the part of the witness. Tex. R. Evid. 613(b). Rodriguez contends that his confrontation right was violated by the trial court's refusal to allow him to cross-examine Pardo regarding Robledo's allegations reflected in the application for a protective order. He argues that the trial court's ruling frustrated his ability to develop the defensive theory that Pardo had a propensity toward violence and was the perpetrator of the alleged offenses. He complains that the jury "did not have the benefit of hearing and observing [Pardo's] responses and reactions to [the] forbidden questions."

The protective order is not in the record. All that we know of its contents is what we infer from the questions counsel asked Pardo during the offer of proof. The only issue preserved for review is whether the trial court reversibly erred by refusing to allow defense counsel to ask Pardo the questions, and elicit the answers, described in the offer of proof.

3

Despite its ruling limiting Pardo's cross-examination, the trial court otherwise permitted Rodriguez to introduce evidence of Pardo's alleged abuse of his former wife and his children. During her cross-examination, L. P. denied that Pardo ever struck her or her siblings, but she recalled Pardo hitting Robledo. She said that she went to the hospital with her mother and father, and that the doctor "started checking her where my dad had hitted her." She added, "They called my dad up, and they told him that he was going to go to jail."

James Pickett, a Children's Protective Services investigator, testified that he was familiar with the protective order that was in effect against Pardo. He said that it had been amended to permit Pardo to have weekend visitation with the children. Pickett also testified that CPS had investigated a report of physical abuse of the children by Pardo, but no injuries had been found.

Robledo testified for the defense. She said that during her marriage to Pardo, he physically abused her in the children's presence "[a]ll the time." Apparently referring to the incident acknowledged by Pardo and described by L. P., Robledo said that she went to the hospital after Pardo struck her and "fractured my hands, and my waist was hurt." She identified defendant's exhibit three as a photograph of herself taken at the hospital.[1]

Robledo also testified that Pardo abused their children. She said that Pardo forced her to engage in sexual activity in front of the children "[r]egularly every night" and that he exposed the children to pornographic videos. She identified another photograph, defense exhibit one, showing Pardo sitting in a chair with their young son standing in front of him. Robledo testified that

---

[1] The photograph appears to have been taken in an examination room. Robledo is standing with her children and smiling. She is in street clothes, and there is no cast or other indication of medical treatment.

Pardo was naked in this photograph and that he "always" went around the house without clothing.[2] Robledo testified that Pardo hit the children "a lot" and did not exercise his visitation rights for two years after the separation. She said that Pardo became "very angry" when he learned that she was living with Rodriguez.

Robledo was asked by defense counsel if she knew "of any sexual abuse or any touching or anything inappropriate between Jesus Pardo and [L. P.]." She answered that Pardo "used to behave toward her in a fashion that was not good." Asked to explain, she said, "He used to take my daughter and pick her up and carry her and hold her and kiss her in the mouth and tell her that he was going to love her. He used to fondle her all over."

Assuming that the trial court erred by refusing to permit Rodriguez to cross-examine Pardo as shown in the offer of proof, we are satisfied beyond a reasonable doubt that the error was harmless. *See Van Arsdall*, 475 U.S. at 684. Pardo admitted before the jury that he assaulted Robledo, resulting in their separation and ultimate divorce, and the jury heard L. P.'s and Robledo's description of this incident. The jury knew that Robledo obtained a protective order against Pardo and that there had been a CPS investigation regarding alleged physical abuse of the children by Pardo. The jury also heard Robledo's testimony accusing Pardo of sexual and physical abuse of herself and her children. The defense emphasized Pardo's physical abuse of Robledo in closing argument. Considering the record as a whole, we conclude that Rodriguez had an ample opportunity

---

[2] Pardo was shown the photograph during his cross-examination. He said that he was wearing a swimming suit when it was taken.

to develop his defensive theory that Pardo was the "true perpetrator" who, for that self-serving reason, testified against Rodriguez.

The point of error is overruled and the judgments of conviction are affirmed.

_____

Bea Ann Smith, Justice

Before Justices B. A. Smith, Patterson and Puryear

Affirmed

Filed:   August 4, 2006

Do Not Publish

6